UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA.

BRIAN EVANS,                                       CASE NO. 02-10061-CIV-KING

       Plaintiff,

vs.

DETECTIVE L. CHRISTINE SCOTT,
individually

       Defendant.
_____/



## SECOND AMENDED COMPLAINT

COMES NOW the Plaintiff, BRIAN EVANS, by and through undersigned counsel, and sues the Defendant, DETECTIVE L. CHRISTINE SCOTT, individually, under 42 U.S.C. §1983 for violating Plaintiff's Fourth and Fourteenth Amendment constitutional rights and in support thereof alleges:

1.    This Court has jurisdiction over the Plaintiff's claims of violation of constitutional rights under 28 U.S.C. § § 1331.

### PARTIES

2.    At all times material hereto, the Plaintiff, BRIAN EVANS, ("MR. EVANS") was sui juris and a citizen of Monroe County, Florida.

3.    At all times material hereto, the Defendant, DETECTIVE L. CHRISTINE SCOTT, ("DET. SCOTT"), worked as a detective at the Monroe County Sheriff's Department in Monroe County, Florida.

### VENUE

4.    Venue is proper in the Southern District of Florida as the alleged events herein took place

in the Southern District of Florida and specifically Monroe County, Florida.

## FACTS COMMON TO ALL COUNTS

5.    Upon information and belief, at or about the end of the year 2001 and the beginning of the
year 2002 the Plaintiff, EVANS, who was a singer and performer in Monroe County, Florida
engaged in significant efforts to organize a "celebrity series" for the local area. The Plaintiff
was new to the area and was attempting to bring the entertainment element to the area in
order to bolster not only his own career but to enrich the community culture and increase the
economic marketplace of the Florida Keys.

6.    Additionally, the Plaintiff was a nationally recognized artist and performer who has put out
several works of music and further performed extensively at various venues around the
United States.

7.    The Defendant, Detective Christine Scott, upon information and belief, was aware of the
celebrity status of the Plaintiff upon the Plaintiff moving to Monroe County, Florida.

8.    In addition, on or about 2002, the Defendant, Detective Christine Scott, who was part of the
sexual crimes unit of the Monroe County Sheriff's Department, had recently concluded one
of the largest investigations and ultimate prosecutions related to child pornography and
illegal sexual behavior in Monroe County. The investigation as the lead detective, as well
as the ultimate conviction of an alleged child pornographer, led to various accolades and
widespread recognition for Detective Scott.    Specifically, at the end of July, 2002,
approximately one week after the alleged wrongful search and seizure as more fully
described below, Detective Scott was due to receive an award as "officer of the year" for her
work related to the child pornography case.

9.    Subsequent to the conclusion of the above described child pornography case, Detective

2

Christine Scott was looking for another "big target" i.e. celebrity. In doing so, she began an investigation related to issues concerning the Plaintiff and his photography work with children.[1] The Defendant was allegedly looking for a "big name" to continue her success that she had just recently attained.

10.    At or about the same time that this investigation by the Defendant was going on, Detective Scott received information about a Tiger Woods trading card that the Plaintiff bid on in an e-bay transaction. Detective Scott received an unverified complaint from an individual in California claiming that he was not properly paid approximately $300.00 for the transaction.

11.    Upon receiving this information, the Defendant knew that she now had the opportunity to potentially obtain incriminating evidence from the home of the Plaintiff related to her initial investigation concerning photographing children. She knew that upon potentially obtaining criminal evidence from the Plaintiff on the first issue, she could continue her widespread attention and success that she had just recently obtained.

12.    Upon receiving this information about a trading card, the Defendant did a cursory investigation of the facts involved and made the hurried determination that the Plaintiff had failed to make payment and/or forwarded a bad check to a victim in California. The Defendant, however, never made any inquiries to the veracity of the complaining victim nor did she had any knowledge of whether the victim himself acted legally in the transaction. In addition, the Defendant never verified whether payment was actually made or received and/or whether the Plaintiff placed a stop payment on the check based on the victim's misrepresentation of the item that the Plaintiff purchased.

---

[1]  As the evidence indicates, all work associated with children done by Brian Evans was fully authorized by all individuals and guardians related thereto.

3

13.     Rather, with the Defendant's limited information, and with the true intent to find incriminating evidence for a separate investigation related to the Plaintiff's interaction with children, on or about July 22, 2002, the Defendant, DET. SCOTT, submitted an Affidavit and Application for a Search Warrant to Judge S. Vernon to do a search of the Plaintiff's home regarding his alleged fraudulent internet purchase of a $300 trading card. The Defendant, however, made no mention of her efforts to find evidence related to a separate investigation but simply attempted to falsely justify a search on the premises for a "golf trading card."

14.     The Affidavit and Application for a Search Warrant requested permission to search the Plaintiff's premises for the Plaintiff's computer equipment, paper bank communications, and a Tiger Woods trading card with yellow mounting tape on the sides.  The application qualified this request by stating it was seeking banking and other information that would specifically relate to the purchase and sale of a Tiger Woods trading card on e-bay.

15.     Upon information and belief, the allegations in the Affidavit and Application for the Search Warrant set forth by the Defendant DET. SCOTT contained numerous falsities and false statements.  Specifically, the Defendant knew or should have known that the entity Pay Pal was not a "victim" in a fraudulent scheme by the Plaintiff as implied by the Defendant as the Defendant had information in its possession that the transaction involving this entity was held up due to the Plaintiff's receipt of an improper card.  In addition, the Defendant knew or should have known that the Plaintiff intentionally stopped payment on the check due to the fact that the card was improper and that the Plaintiff specifically sent the improper merchandise back to the alleged "victim" Michael Sanders, via certified mail.  The Defendant further alleged in her application to obtain a search warrant that the Plaintiff was

4

involved in a WIPO Arbitration concerning screen names.  The Defendant knew or should have known that this matter was civil in nature and completely unrelated to the trading card at issue in this case.  In addition, the Defendant allegedly had no knowledge at the time she did the affidavit of what a WIPO Arbitration was.  Yet, despite this lack of knowledge, the Defendant set forth the allegations in the context of a criminal matter in order to prejudice the court into issuing the search warrant so she could find evidence related to a different matter entirely.

16.     On or about July 22, 2002, based upon the unverified, false and/or misleading statements by the Defendant Judge Vernon granted the Search Warrant for a search and seizure of the previously listed items at MR. EVANS' property located at 17195 West Hibiscus Lane, Sugarloaf Key, County of Monroe, Florida.

17.     On or about July 22, 2002, DET. SCOTT carried out the warrant on MR. EVANS' property located at 17195 West Hibiscus Lane, Sugarloaf Key, County of Monroe, Florida.  DET. SCOTT and/or officers of the Sheriff's Department. executed the warrant by searching the Plaintiff, MR. EVANS' home while he was absent.

18.     In the execution of the search warrant DET SCOTT and/or officers searched the Plaintiff's motor vehicle which was not listed on the aforementioned search warrant.

19.     Additionally, DET. SCOTT and/or officers of the Monroe County Sheriff's Department executed the aforementioned search warrant on the Plaintiff, MR. EVANS', home by:

a.      needlessly surrounding the Plaintiff's home with several patrol cars;

b.      making an excessively long search of the Plaintiff's home and motor vehicle; and

c.      by taking countless personal possessions from MR. EVANS' home, including items not listed on the search warrant, as witnessed by numerous neighbors and recounted

5

by the local media.

d.    searching for and collecting items that the Defendant knew or should have known had nothing to do with the investigation over a "trading card."

20.    A mandatory inventory list indicates that DET. SCOTT and/or the Sheriff Department officers at her direction took items outside the scope of the search warrant's list including but not limited to several VCR videos, a Brinks Safe model number 5059, trading cards, and a private letter. These items were completely irrelevant to what was stated on the warrant. In addition, none of these items related to the allegations made by the Defendant in her affidavit which requested the search warrant to be issued in the first place.

21.    Additionally, computers were taken from the home of the Plaintiff which the Defendant knew at least one of them did not belong to the Plaintiff.

22.    A search was subsequently conducted of all of the computers taken and upon information and belief no evidence was found related to the "trading card" investigation in which the Defendant stated she was involved.

23.    However, at the direction of the Defendant, an additional search was performed on the computers looking for possible criminal evidence of child pornography. This additional search was not authorized by any warrant obtained by the Defendant related to a "trading card."

24.    Upon completion of the search it was determined by a specialist employed by the Monroe County Sheriff's Department, that no child pornography existed. This information was then forwarded to the Defendant, Detective Scott.

25.    The Defendant then proceeded pursuant to department policy to write out an "offense report" related to her affidavit and search and seizure of the premises of the Plaintiff in order to find

6

a "Tiger Woods Trading Card." She outlined the events that led up to the search and further outlined the search. This offense report was supposed to be specifically for a Tiger Woods trading card pursuant to her authorization.

26.     However, on the same offense report, a public document that any member of the public could access upon request after the completion of the investigation, the Defendant maliciously writes "in regards to this possible find of child pornography."

27.     This statement, which would be in full public view, was completely unrelated to investigation of the Tiger Woods trading card. Moreover, the Defendant either failed to determine the outcome of the "illegal" search of the computers for child pornography or knew that no child pornography was found on the computers yet put it on a public document anyway in an effort to hurt the reputation of the Plaintiff.

28.     The above statement and illegal search related to child issues had nothing to with a Tiger Woods trading card. Moreover, the Defendant allegedly began additional investigations concerning other things that she found on the premises of the Plaintiff that were unrelated to the Tiger Woods trading card. For each one of these investigations, the Defendant created separate offense reports with separate offense report numbers. However, for the issues related to children, the Defendant decided to write it down, "out of context," on the same report that concerning the Tiger Woods trading card.

<h3 style="text-align:center">COUNT I<br>DETECTIVE CHRISTINE SCOTT<br>VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS REMEDIED<br>THROUGH 42 U.S.C. § 1983</h3>

29.     Plaintiff reaffirms and realleges paragraphs one (1) through twenty-eight (28) as if fully set forth herein.

Downs & Associates ● 255 University Drive ● Coral Gables, FL. 33134 ● (305) 444-8226 ● Fax (305) 444-6773

30. Under the Fourth Amendment of the United States Constitution, the Plaintiff possesses a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures.

31. DET. SCOTT unlawfully, unreasonably, and abusively executed the aforementioned search warrant by virtue of the authority of the Monroe County Sheriff's department when she made unverified sworn statements in her request to obtain a search warrant which she knew or should have known to be false and/or misleading. In addition, the Defendant and several other officers unreasonably surrounded the Plaintiff's home and then searched it for several hours in order to find items relating to an alleged fraudulent purchase of a mere trading card.

32. DET. SCOTT unlawfully and unreasonably searched and seized items from the Plaintiff's home when she went outside the scope of the aforementioned search warrant by searching through items in the Plaintiff's home and subsequently seizing various items that were not listed on the search warrant and/or were not related to the authorized investigation.

33. DET. SCOTT unlawfully and unreasonably searched the Plaintiff's motor vehicle, which was not listed on the aforementioned search warrant.

34. DET. SCOTT unlawfully and unreasonably authorized an additional search of items belonging to the Plaintiff, specifically, computers, in order to obtain evidence for a separate investigation that was not included on the affidavit for a search warrant.

35. As a direct and proximate result of the actions of the Defendant DET. SCOTT as described above the Plaintiff has suffered severe and significant damages to both his mental state and reputation in the community and beyond. The Plaintiff is a public figure that derives income on his reputation and ability to maintain positive public opinion. As a result of such actions this ability is hindered and the Plaintiff has been subjected to the loss of potential economic

8

damages in addition to the emotional pain that the above actions has caused to him.

36. The Defendant additionally acted maliciously and wantonly against the Plaintiff, a "big name", in order to further her own career by setting out unverified and misleading facts in order to obtain the search warrant, searching and seizing items that were unrelated to the "trading card" investigation but rather a different investigation related to issues dealing with children, authorizing an additional search of the computers of the Plaintiff in order to find criminal evidence of an unrelated investigation concerning issues with children, and maliciously placing information on a public document, that evidence was found concerning these issues, when the Defendant knew or should have known that such statements were untrue and no evidence was found underlying such statements.

37. Due to the actions as described above the Plaintiff has been required to retain the services of the law firm of Downs and Associates, P.A. and is obligated to pay reasonable attorneys fees thereto.

**WHEREFORE**, the Plaintiff, BRIAN EVANS, demands judgment against the Defendant, DETECTIVE L. CHRISTINE SCOTT, individually, for compensatory and punitive damages together with statutory interest, pre-judgement interest, attorney's fees, costs, trial by jury for all issues so triable, and any other relief that this Court deems proper.

## COUNT II
## DETECTIVE CHRISTINE SCOTT
## VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS REMEDIED THROUGH 42 U.S.C. § 1983

38. Plaintiff reaffirms and realleges paragraphs one (1) through twenty-eight (28) as if fully set forth herein.

39. Under the Fourteenth Amendment of the United States Constitution, the Plaintiff possesses

9

a right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures.

40.     DET. SCOTT unlawfully, unreasonably, and abusively executed the aforementioned search warrant by virtue of the authority of the Monroe County Sheriff's department when she made unverified sworn statements in her request to obtain a search warrant which she knew or should have known to be false and/or misleading.  In addition, the Defendant and several other officers unreasonably surrounded the Plaintiff's home and then searched it for several hours in order to find items relating to an alleged fraudulent purchase of a mere trading card.

41.     DET. SCOTT unlawfully and unreasonably searched and seized items from the Plaintiff's home when she went outside the scope of the aforementioned search warrant by searching through items in the Plaintiff's home and subsequently seizing various items that were not listed on the search warrant and/or were not related to the authorized investigation.

42.     DET. SCOTT unlawfully and unreasonably searched the Plaintiff's motor vehicle, which was not listed on the aforementioned search warrant.

43.     DET. SCOTT unlawfully and unreasonably authorized an additional search of items belonging to the Plaintiff, specifically, computers, in order to obtain evidence for a separate investigation that was not included on the affidavit for a search warrant.

44.     As a direct and proximate result of the actions of the Defendant DET. SCOTT as described above the Plaintiff has suffered severe and significant damages to both his mental state and reputation in the community and beyond.  The Plaintiff is a public figure that derives income on his reputation and ability to maintain positive public opinion.  As a result of such actions this ability is hindered and the Plaintiff has been subjected to the loss of potential economic damages in addition to the emotional pain that the above actions has caused to him.

10

45.     The Defendant additionally acted maliciously and wantonly against the Plaintiff, a "big name", in order to further her own career by setting out unverified and misleading facts in order to obtain the search warrant, searching and seizing items that were unrelated to the "trading card" investigation but rather a different investigation related to issues dealing with children, authorizing an additional search of the computers of the Plaintiff in order to find criminal evidence of an unrelated investigation concerning issues with children, and maliciously placing information on a public document, that evidence was found concerning these issues, when the Defendant knew or should have known that such statements were untrue and no evidence was found underlying such statements.

46.     Due to the actions as described above the Plaintiff has been required to retain the services of the law firm of Downs and Associates, P.A. and is obligated to pay reasonable attorneys fees thereto.

        **WHEREFORE**, the Plaintiff, BRIAN EVANS, demands judgment against the Defendant, DETECTIVE L. CHRISTINE SCOTT, individually, for compensatory and punitive damages together with statutory interest, pre-judgement interest, attorney's fees, costs, trial by jury for all issues so triable, and any other relief that this Court deems proper.

## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed via U.S. mail and fax on the 7th day of August, 2003, to: Purdy, Jolly & Giuffreda, P.A., Michael Stephensen, Esq.; 1322 S.E. Third Ave., Ft. Lauderdale, FL 33316.

Downs & Associates ● 255 University Drive ● Coral Gables, FL. 33134 ● (305) 444-8226 ● Fax (305) 444-6773

Respectfully submitted,

Downs & Associates, P.A.
255 University Drive,
Coral Gables, FL 33134
Telephone No. (305) 444-8226
Fax No. (305) 444-6773


Jeremy D. Friedman, Esq.
FLORIDA BAR NO. 134643