

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BRIAN EVANS,               CASE NO. 02-10061-CIV-KING

    Plaintiff,

v.

DETECTIVE L. CHRISTINE SCOTT,
individually,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment, filed November 17, 2003. Plaintiff has not filed a Response, and the time to do so has passed.[1]

### BACKGROUND

On June 27, 2002, the Monroe County Sheriff's Office ("MCSO") received a telephone call about Plaintiff's refusal to pay for a Tiger Woods trading card he had purchased on eBay. (Ex. 2, Offense Report.) The caller, Michael Sanders,[2] told Deputy Mimosa that he had sold Plaintiff a Tiger Woods trading card through eBay, and Plaintiff had cancelled his payment to Sanders after receiving

---

[1] Pursuant to this Court's April 10, 2003 Pre-Trial Order, the deadline for filing all Motions was November 17, 2003. The Court's Pre-Trial Order clearly states that "the deadlines for completion of motion practice, discovery, and filing of Pretrial Stipulation shall be strictly followed by counsel" in order to give the Court sufficient time to consider all unresolved motions prior to the Pre-Trial Conference.
Instead of filing his Response to Defendant's Motion for Summary Judgment as required by Fed.R.Civ.P. 56(e) and S.D. Fla. L.R. 7.1(c), on November 21, 2003, four (4) days past the deadline established in the Pre-Trial Order, Plaintiff filed a Motion to Strike Defendant's Answer and Motion to Stay Response to Motion for Summary Judgment. The Court will not consider any motions filed by either party beyond the deadline established in the Pre-Trial Order. Therefore, all untimely filed motions have been <u>stricken</u> from this record by separate Order of the Court.

[2] Michael Sanders is a private citizen and not a party to this action.

the card. Sanders further explained that Plaintiff was now in possession of the card and trying to sell it himself on eBay, and Sanders still had not received payment for the card. Id. Five days later, Detective L. Christine Scott ("Defendant") was assigned to investigate Sanders's complaint. (Ex. 3, Aff. & Offense Report, p. 3.)

On July 2, 2002, Defendant commenced her investigation by speaking to Sanders directly and reviewing the documentation[3] Sanders had sent her substantiating his claim. Id. Defendant asked Sanders if he wanted to pursue a case against Plaintiff for fraud, and Sanders said yes. (Ex. 1, Dep. of Det. Scott, p. 185-86.) Subsequently, on July 22, 2002, Defendant drafted an Affidavit and Application for Search Warrant ("Affidavit") for Plaintiff's home.[4] Defendant then got the Affidavit approved by her supervisor, Sergeant Randolf,[5] and Assistant State Attorney Manuel Madruga. (Ex. 3, Aff. & Offense Report, p. 4.) Later that day, Judge Susan Vernon reviewed the Affidavit and signed the Search Warrant. (Ex. 33, Search Warrant.)

Four officers[6] then proceeded to Plaintiff's house to execute the Search Warrant, and Plaintiff's home and car were searched. (Ex. 3, Aff. & Offense Report, p. 4-5.) During the search,

---

[3]This documentation included eBay auction documents and numerous e-mails. (Ex.'s 4-26.)

[4]Defendant applied for the search warrant under Florida Statute § 817.03, which states that "[a]ny person who shall make or cause to be made any false statement, in writing, relating to his or her financial condition, assets or liabilities. . . with a fraudulent intent of obtaining credit, goods, money or other property, and shall by such false statement obtain credit, goods, money or other property, shall be guilty of a misdemeanor of the first degree. . ." Fla. Stat. Ann. tit. 46, § 817.03 (West 2000).

[5](Ex. 34, Dep. of Sgt. Randolf, p. 24-25.)

[6]The four officers who executed the search were Sergeant Randolf, Detective Henry Hamilton, Detective Don Catalia, and Defendant.

2

Sergeant Randolf found two safes in Plaintiff's car, one of which contained a Tiger Woods trading card. (Ex. 34, Dep. of Sgt. Randolf, p. 77.) Several items were subsequently seized, inventoried, and taken to the Sheriff's Office.[7] Id.

The day after the search, Defendant turned the computers seized from Plaintiff's home over to MCSO computer forensics examiner Michael Grattan to search for evidence of fraud relating to the eBay transaction. (Ex. 3, Aff. & Offense Report, p. 5.) Grattan examined the internet files on Plaintiff's computer and found evidence that Plaintiff had visited some websites that were "possibly related to child porn." (Ex. 35, Dep. of Grattan, p. 35-36.) This information was turned over to the MCSO's Crimes Against Women and Children Unit, who turned the information over to Agent Mac Fuss of U.S. Customs.[8] Defendant's Offense Report reflects that the fraud case against Plaintiff was closed on August 9, 2002, and that Plaintiff was never prosecuted regarding Sanders's complaint. (Ex. 3, p. 7.)

On September 5, 2003, Plaintiff filed his Second Amended Complaint[9] under 42 U.S.C. § 1983 against Defendant in her individual capacity for alleged violations of Plaintiff's Fourth and Fourteenth Amendment constitutional rights. Specifically, Plaintiff alleges that Defendant violated his civil rights because Defendant: 1) made unverified sworn statements in her request to obtain a search warrant which she knew or should have known were false; 2) unreasonably searched Plaintiff's

---

[7]The official Inventory is attached to Ex. 1, Dep. of Det. Scott, as Pl.'s Ex. 38.

[8]According to Defendant's current Motion, it seems that U.S. Customs did not pursue a case against Plaintiff, nor did the MCSO conduct any further investigation with regard to this matter. (Mot. at 20.)

[9]Plaintiff's original Complaint was filed on August 8, 2002, against the MCSO, Sheriff R. Roth, and Defendant.

3

house and car; 3) unreasonably seized items outside the scope of the search warrant; 4) unreasonably authorized the search of Plaintiff's computer in order to obtain evidence for a separate investigation; and 5) maliciously placed information on a public document that she knew or should have known was untrue.

In her current Motion, Defendant argues that she is entitled to summary judgment because: 1) Plaintiff's Fourteenth Amendment claims are precluded by the Fourth Amendment; 2) Defendant is entitled to qualified immunity because she did not violate clearly established law; and 3) Plaintiff's allegations are contradicted by the record.

## LEGAL STANDARD

Summary judgment is appropriate only where it is shown that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no requirement that the trial judge make findings of fact. Id. at 251.

The party seeking summary judgment always bears the initial burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. Hairston, 9 F.3d at 918. To meet this burden, the non-moving party must go beyond the

4

pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the court should refuse to grant summary judgment. Hairston, 9 F.3d at 919. Moreover, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue,... Rule 56(e)... requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.

## DISCUSSION

I.   Plaintiff's Fourteenth Amendment Claim (Count II) is Precluded as a Matter of Law

In Graham v. Conner, the Supreme Court made explicit that the Fourteenth Amendment cannot supply the basis for a civil rights claim if another, more specific Amendment addresses the government conduct at issue. 490 U.S. 386, 394-95 (1989). Notably, the Fourth Amendment of the U.S. Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." Here, Plaintiff's allegations are identical under his Fourth Amendment (Count I) and Fourteenth Amendment (Count II) claims, and all involve Defendant's application for and execution of a search warrant. Therefore, because the Fourth Amendment specifically addresses the government conduct at issue, Plaintiff's Fourteenth Amendment claim is precluded by the Fourth Amendment and must be dismissed as a matter of law.

II.  Defendant did not Violate Plaintiff's Fourth Amendment Rights (Count I) in her Application for or Execution of the Search Warrant

A government official sued in her individual capacity under § 1983 is entitled to the complete protection of qualified immunity so long as her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Eleventh Circuit uses a two-part analysis for the defense of qualified immunity. Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995). First, the defendant must show that she was "acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred." Id. Then, if the defendant meets her burden, the plaintiff must show that the defendant's conduct "violated clearly established law based upon objective standards." Id. This test allows courts to rely "on the objective reasonableness of an official's conduct... and permit[s] the resolution of many insubstantial claims on summary judgment." Id.

In the instant case, there is no dispute between the parties that Defendant was acting within her discretionary authority as a Monroe County sheriff's detective when she applied for and executed the Search Warrant. Thus, the sole issue is whether Plaintiff can show that Defendant violated clearly established law during her investigation of Plaintiff.

A.  The Statements Made in Defendant's Affidavit and Application for Search Warrant Were Not False

An affidavit in support of a duly issued search warrant is presumed valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). Thus, in order to successfully challenge an affidavit on Fourth Amendment grounds, the challenger must demonstrate that the affiant made false statements and did so deliberately or with reckless disregard for the truth. Id. Moreover, allegations of mere negligence or innocent mistake are insufficient to establish a Fourth Amendment violation. Id. at 171.

6

In his Complaint, Plaintiff identifies three statements made by Defendant in her Affidavit that Defendant "knew or should have known" were false. (Pl.'s Compl. ¶ 15.) Specifically, Plaintiff alleges that: 1) Defendant falsely implied that Pay Pal was a victim in Plaintiff's fraudulent scheme; 2) Defendant knew or should have known that Plaintiff intentionally stopped payment on his check to Sanders because the trading card Sanders sent him was "improper" and that Plaintiff returned the trading card to Sanders via certified mail; and 3) the information Defendant included about the World Intellectual Property Organization (WIPO) decision that found Plaintiff had registered domain names in bad faith was civil in nature and thus, irrelevant to Defendant's criminal investigation of Plaintiff. (Id.)

First, Plaintiff's Complaint fails as a matter of law because he merely alleges that Defendant "knew or should have known" that the challenged statements were false. Nowhere in his Complaint does Plaintiff allege that Defendant made these statements knowing that they were false or with reckless disregard for their truth. Moreover, there is ample evidence in the record to suggest that Defendant had reason to believe her statements were true. For example, Defendant had an e-mail from Pay Pal to Sanders informing him that he had "received funds from an account with reports of fraudulent bank account use" and that Pay Pal "would like to obtain as much information as possible about the [ ] transaction... in order to expedite [Pay Pal's] investigation" of the possible fraud. (Ex. 7, Pay Pal e-mail, 6/17/02.) Thus, Defendant's statement in the Affidavit that there "may be evidence of the crime of fraud to Sanders and possibly Pay Pal"[10] was not false, and was entirely reasonable in light of the evidence Defendant had before her.

Second, there was no way Defendant "knew or should have known" that Plaintiff's alleged

---

[10] (Ex. 32, Aff.& Application for Search Warrant, p. 3.)

7

reason for stopping payment on the trading card was because the card was "improper." In contrast, Defendant had before her over sixteen (16) e-mails from Plaintiff to Sanders, and while many of them offered excuses for Plaintiff's failure to pay Sanders for the card, none of them mentioned that Plaintiff was dissatisfied with the card. (Ex.'s 5-6, 8-11, 13-15, 17-21, 24, & 25.) In fact, the evidence Defendant had before her suggested that Plaintiff was quite satisfied with the trading card and was currently trying to sell it on eBay where Plaintiff's advertisement described the card as "awesome." (Ex. 22.)

Finally, Plaintiff does not allege that the statements made by Defendant in the Affidavit regarding the WIPO decision were false; instead, he merely alleges that they were irrelevant to Defendant's investigation of Sanders's fraud complaint. In fact, Defendant's statements regarding the WIPO's finding that Plaintiff had registered domain names in bad faith were entirely true. (Ex. 31, WIPO Administrative Panel Decision, 2/14/02.) Therefore, the Court finds that Defendant's challenged statements were not false and were amply supported by the evidence before Defendant at the time she applied for the Search Warrant.

    B.    <u>The Search of Plaintiff's Home and Car Was Reasonable and Did Not Violate Plaintiff's Fourth Amendment Rights</u>

It is well settled that a duly executed search warrant[11] authorizing a search of "the premises" or "the premises and/or curtilage" authorizes the search of the premises identified in the search warrant and any vehicles parked on or reasonably near those premises. <u>United States v. Napoli</u>, 530

---

[11]Plaintiff does not contend that the Affidavit and Application for Search Warrant lacked probable cause to authorize issuance of the Search Warrant. In fact, the record is replete with evidence to establish that Defendant had probable cause to believe Plaintiff had committed fraud. In addition, Defendant's Affidavit was found to support probable cause to search by Judge Vernon, Assistant State Attorney Manuel Madruga, and Defendant's supervisor, Sergeant Randolf. <u>See</u> Background, <u>supra</u>, at 2.

F.2d 1198, 1200 (5th Cir. 1976). In his Complaint, Plaintiff alleges that the search of his car was unreasonable because the Search Warrant did not authorize a search of his vehicle. However, it is undisputed that Plaintiff's car was parked in front of his home, and the Search Warrant authorized the search of the "premises and/or curtilage thereof. . . occupied by or under the control of [Plaintiff.]" (Ex. 33, Search Warrant.) Therefore, the Search Warrant authorized the search of Plaintiff's vehicle.

Plaintiff further alleges that the search of his home was unreasonable because it took an excessively long time and his home was needlessly surrounded with several patrol cars. However, it is undisputed that the search took approximately one and a half hours with no more than four (4) officers present. (Ex. 3, Aff. & Offense Report, p. 4-5.) Plaintiff has cited no authority that a one and a half hour search executed pursuant to a duly authorized search warrant with four (4) patrol cars present violates the Fourth Amendment. Therefore, the Court finds that the search of Plaintiff's home and car was entirely reasonable and did not violate any clearly established law.

C. <u>Defendant Did Not Seize Items Outside the Scope of the Search Warrant, Nor Did She Unreasonably Authorize the Search of Plaintiff's Computers</u>

It is well-settled that law officers executing a valid search warrant may search in any place or thing that might contain or conceal items listed in the search warrant and break open locked containers that may contain such items. <u>United States v. Jackson</u>, 120 F.3d 1226, 1228-29 (11th Cir. 1997). In his Complaint, Plaintiff alleges that Defendant illegally seized numerous personal items outside the scope of the Search Warrant including: 1) computers; 2) several VCR videos; 3) a private letter; and 4) a Brinks Safe.

Plaintiff's claim that the search and seizure of his computers was unauthorized is without merit. In the instant case, the Search Warrant was issued to investigate a possible internet fraud and

9

specifically authorized the search and seizure of computer equipment, e-mails, paper print outs, bank statements or notices, and a Tiger Woods trading card. (Ex. 33, Search Warrant.) Furthermore, the Search Warrant authorized detectives to "search IN such computer equipment, software, CD disks, paper print outs, software and hard drives." (Id.) Finally, the MCSO computer specialist who searched Plaintiff's computers testified that Defendant only told him to search Plaintiff's computers for fraud relating to an eBay transaction and never told him to search Plaintiff's computers for child pornography or any other "separate investigation." (Ex. 35, Dep. of Grattan, p. 32-33.) Therefore, the Court finds that the Search Warrant authorized the search and seizure of Plaintiff's computers, and Defendant's authorization of the search of Plaintiff's computers was not unreasonable.

The remainder of Plaintiff's claims are equally without merit. First, it is undisputed that Sergeant Randolf, not Defendant, seized two (2) video tapes that were in a box with other computer equipment because he believed they could contain computer data. (Ex. 34, Dep. of Sgt. Randolf, p. 55.) Second, the private letter that was seized did not belong to Plaintiff nor anyone else residing at the premises, and Plaintiff's roommate gave Defendant permission to take the letter. (Ex. 3, Aff. & Offense Report, p. 4-5.) Third, the two (2) Brinks safes that were seized could have contained items, such as bank statements, that were listed in the Search Warrant.[12] Finally, the Court has independently reviewed the official Inventory[13] that lists all items taken by the officers during the search of Plaintiff's home and car and finds that all items searched and seized were well within the scope of the Search Warrant. Therefore, the Court finds that Defendant's search and seizure of

---

[12] In fact, Sergeant Randolf found a Tiger Woods trading card, an item specifically listed in the Search Warrant, in one of the two safes that were seized. (Ex. 34, Dep. of Sgt. Randolf, p. 77.)

[13] (Pl.'s Ex. 38, attached to Ex. 1, Dep. of Det. Scott.)

10

Plaintiff's personal items did not violate his Fourth Amendment rights.

D. <u>Defendant Did Not Maliciously Place Information on a Public Document That She Knew or Should Have Known Was Untrue</u>

Under Florida law, a police officer has absolute immunity for defamatory statements made within the scope of her official duties. <u>Forman v. Murphy</u>, 501 So.2d 640 (Fla. 4th DCA 1986). In his Complaint, Plaintiff alleges that Defendant maliciously placed information on a public document that she knew or should have known was false in order to ruin Plaintiff's reputation.

In the instant case, the statement Plaintiff is complaining about appears on Defendant's official Affidavit and Offense Report and reads "[i]n regards to this find of possible child porn, I contacted the State Attorney's Office and spoke with ASA Kathryn Vogel." (Ex. 3, p. 7.) Here, the Court finds that Defendant's statement was made in Defendant's official capacity, was not malicious or defamatory, but instead, merely reflected the course of Defendant's investigation of Plaintiff. However, even if Defendant's statement was defamatory, Defendant has absolute immunity against such claims. Therefore, Plaintiff's claim must fail as a matter of law.

## CONCLUSION

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be, and the same is hereby, GRANTED. Plaintiff's Second Amended Complaint is hereby DISMISSED in its entirety. The Court retains jurisdiction of the above-styled action to determine fees, costs, and expenses, if any, incurred by Defendant in defending this action.[14]

---

[14]Pursuant to S.D. Fla. L.R. 7.3(A) and this Court's entry of Final Judgment, Defendant shall file any motion for attorney's fees, costs, and expenses within thirty (30) days.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 5th day of January, 2004.

                                                                                        *[signature]*
                                                                                        JAMES LAWRENCE KING
                                                                                        U.S. DISTRICT JUDGE
                                                                                        SOUTHERN DISTRICT OF FLORIDA

cc:   Michael J. Stephenson, Esq.
       Purdy, Jolly, & Giuffreda, P.A.
       1322 S.E. 3rd Avenue
       Fort Lauderdale, FL 33316

       Jeremy D. Friedman, Esq.
       Downs & Associates, P.A.
       255 University Drive
       Coral Gables, FL 33134